IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUL 10 2009
JAMES W. McCORMACK, CLERK
By: [signature]
DEP CLERK

TYGRIS VENDOR FINANCE, INC.,
f/k/a US EXPRESS LEASING, INC. PLAINTIFF

v. CASE NO. 4:09-CV-492 WRW

DR. NORMAN R. PLEDGER
individually and d/b/a PROTHRO
MEDICAL CLINIC DEFENDANT

This case assigned to District Judge Wilson
and to Magistrate Judge Young

COMPLAINT

Plaintiff, Tygris Vendor Finance, Inc. f/k/a US Express Leasing, Inc., for its Complaint, states:

PARTIES

1. Plaintiff is a Delaware corporation properly authorized and doing business in the State of Arkansas. TVF was formerly known as US Express Leasing, Inc.

2. Based upon information and belief, Defendant, Dr. Norman R. Pledger, is a resident of Pulaski County, Arkansas. Defendant does business as Prothro Medical Clinic. Defendant's business is or was located at 5207 East Broadway Street, North Little Rock, Arkansas, 72117.

JURISDICTION AND VENUE

3. This is an action based upon Defendant's default in payment according to the terms and conditions of a lease agreement and personal guaranty.

4. This Court possesses personal jurisdiction of the parties. The Court possesses subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332. The amount in controversy exceeds $75,000, and there exists complete diversity between the parties.

5. Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391.

**FACTUAL BACKGROUND**

6. On or about May 11, 2006, Defendant entered into a lease agreement with Plaintiff for the lease of medical equipment specifically known as a Cynosure Apogee Elite Laser System/Tri-Active System (collectively, the "Equipment"). The lease agreement is attached hereto as **Exhibit A** (the "Lease Agreement"). The parties agreed that the Lease Agreement served as a finance lease. Exhibit A, p. 2, ¶ 10.

7. The Equipment was chosen by Defendant and purchased from Cynosure, Inc.

8. Plaintiff remitted full payment to Cynosure, Inc. for the Equipment in exchange for Defendant's execution of the Lease Agreement and a Personal Guaranty.

9. Under the terms of the Lease Agreement, Defendant agreed to make sixty (60) monthly payments to Plaintiff in the amount of $3,880.00, plus applicable taxes.

10. Under the terms and conditions of the Lease Agreement, Defendant agreed that the Lease Agreement could not be terminated, that he had an unconditional obligation to make all payments due under the Lease Agreement, and that he could not withhold, set off, or reduce such payments for any reason. *See* Exhibit A.

11. Defendant signed a Personal Guaranty in which he "unconditionally and irrevocably" guaranteed the prompt payment and performance of the obligations under the Lease Agreement. *See* Exhibit A.

12. On or about August 9, 2006, Defendant subsequently executed an amendment to the Lease Agreement (the "Amendment"). *See* **Exhibit B** attached hereto. The Amendment added three pieces of medical equipment to the Lease Agreement, including a Cynosure Apogee Elite Laser System, a Cynosure Affirm Laser System, and an Eclipse Medical Smartsound System/Microdermabrasion System (also referred to collectively as the "Equipment").

13. The Equipment described in the Amendment was chosen by Defendant and purchased from Cynosure, Inc. and Eclipse Medical, LTD.

14. Plaintiff remitted full payment to Cynosure, Inc. and Eclipse Medical, LTD. for the Equipment described in the Amendment in exchange for Defendant's execution of the Amendment.

15. Under the terms of the Amendment, Defendant agreed to make sixty (60) monthly payments to Plaintiff in the amount of $4,217.0, plus applicable taxes.

16. On or about August 28, 2006, Defendant signed the Delivery and Acceptance Certificate certifying that the Equipment had been delivered, inspected, and was accepted by Defendant as satisfactory for all purposes of the Lease Agreement. Defendant authorized Plaintiff to purchase the Equipment from Cynosure, Inc. and start billing Defendant under the Lease Agreement. A copy of the Delivery and Acceptance Certificate is attached hereto as **Exhibit C**.

17. Defendant has failed to satisfy his payment obligations under the Lease Agreement and Personal Guaranty. Following both oral and written demands for payment, Defendant continued to refuse to satisfy his payment obligations under the Lease Agreement and Personal Guaranty. *See* **Exhibit D** attached hereto. Defendant has therefore defaulted under the terms of the Lease Agreement and Personal Guaranty.

18. As is its right under the Lease Agreement, Plaintiff has elected to declare the entire unpaid balance of the lease payments immediately due and payable. The current balance immediately due and payable is $219,783.91, an amount which includes amounts due under the Lease Agreement and late fees minus $19,510 net collected upon the fair market value sale of the Equipment after its repossession.

**COUNT I: BREACH OF CONTRACT - LEASE AGREEMENT AND PERSONAL GUARANTY**

19. Plaintiff hereby re-alleges and incorporates the allegations set forth in the Paragraphs above.

20. Defendant entered into the Lease Agreement with Plaintiff for the lease of the Equipment, which was purchased from Cynosure, Inc and Eclipse Medical, LTD. *See* Exhibits A and B. The parties agreed that the Lease Agreement served as a finance lease. Exhibit A, p. 2, ¶ 10.

21. Defendant accepted delivery of the Equipment and agreed that Plaintiff was authorized to purchase the Equipment and start billing Defendant under the Lease Agreement. *See* Exhibit C.

22. Plaintiff remitted full payment to Cynosure, Inc. and Eclipse Medical, LTD. for the purchase of the Equipment.

23. By executing the Lease Agreement, Defendant unconditionally agreed to make monthly payments to Plaintiff for the Equipment.

24. Defendant signed a Personal Guaranty in which he "unconditionally and irrevocably" guaranteed the prompt payment and performance of the obligations under the Lease Agreement. *See* Exhibit A.

25. Defendant breached the Lease Agreement and Personal Guaranty by failing to fulfill his payment obligations to Plaintiff. Plaintiff made demands upon Defendant for payment upon default. *See* Exhibit D.

26. Plaintiff has suffered damages as a result of Defendant's breach of his obligations under the Lease Agreement and Personal Guaranty.

27. At the time of the filing of this Complaint, Defendant owes Plaintiff the amount of $219,783.91, which includes amounts due under the Lease Agreement and late fees. Further, Defendant is liable for the payment of Plaintiff's costs and expenses incurred in the collection of the amounts owed under the Lease Agreement and Personal Guaranty, including a reasonable attorney's fee.

28. Plaintiff reserves the right to plead further damages resulting from Defendant's breach of his obligations under the Lease Agreement and Personal Guaranty.

**ATTORNEY'S FEES**

29. Plaintiff is entitled to recover its attorney's fees and costs expended to bring this action resulting from Defendant's breach of contract pursuant to Ark. Code Ann. § 16-22-308.

**WHEREFORE,** Plaintiff prays that it have and recover from Defendant the amounts stated above, plus its costs, fees (including a reasonable attorney's fee), and expenses incurred herein, and any and all other just and proper relief to which it may be entitled.

Respectfully submitted,

CHISENHALL, NESTRUD & JULIAN, P.A.
400 West Capitol Avenue, Suite 2840
Regions Bank Center
Little Rock, Arkansas 72201
Telephone: (501) 372-5800
Facsimile: (501) 372-4941

By: ______________________________
Mark W. Hodge, ABN 97205
Jason W. Earley, ABN 2004166

ATTORNEYS FOR PLAINTIFF

# LEASE AGREEMENT

USXL
US Express Leasing

*Please fax completed agreement to 1-866-329-6795*
*Questions or need assistance? Call 1-866-550-8795*

This Lease has been written in "Plain English." When we use the words Lessee, you and your in this Lease, we mean you, our customer, which is the Lessee indicated below. When we use the words we, us, and our in this Lease, we mean the Lessor, US Express Leasing, Inc. Our address is 300 Lanidex Plaza, Parsippany, New Jersey 07054.

**CUSTOMER INFORMATION**

Lessee Name: PLEDGER, M.D., NORMAN R. d/b/a Protho Medical Clinic

Billing Street Address/City/County/State/Zip: 5207 EAST BROADWAY STREET, NORTH LITTLE ROCK, PULASKI, AR, 72117

Lease #40183138

Equipment Location (if different from above): 5207 EAST BROADWAY STREET, NORTH LITTLE ROCK, AR, 72117

Customer Phone #: (501) 945-2033

**SUPPLIER INFORMATION**

Supplier Name ("SUPPLIER"): CYNOSURE, INC.

Street Address/City/State/Zip: 5 CARLISLE ROAD, WESTFORD, MA, 01886

Supplier Phone #: (888) 523-2333

**EQUIPMENT DESCRIPTION**

| Equipment Description | Quantity | Serial Number |
|---|---|---|
| CYNOSURE APOGEE ELITE LASER SYSTEM | 1 | |
| TRI-ACTIVE SYSTEM | 1 | |

**END OF LEASE PURCHASE OPTION**

Check one applicable box. If no box is checked or if more than one box is checked, the Fair Market Value Purchase Option will apply.

X Fair Market Value Purchase Option    $1.00 Purchase Option

Fixed Price Purchase Option of 10% of the Total Cash Price (defined in Section 1)

PLUS APPLICABLE TAXES

**TERM AND PAYMENT SCHEDULE**

| Initial Lease Term: | Lease Payment: | You agree to pay at the time you sign this Lease: |
|---|---|---|
| 66 Months (see Section 1 on page 2 of this Lease) | 3 @ $0.00<br>3 @ $25.00<br>60 @ $1,466.01 | A) Total Number of Advances: 1 (Mos.)<br>B) Total Advance Lease Payment - $0.00<br>C) Sales/Use Tax on Lease Payment =$0.00 |
| Payment Frequency: Monthly | $3480.00 | D) One-time Documentation Fee = $150.00<br>E) Total Due = $150.00<br>If more than one Lease Payment is required in advance, the additional amount will be applied at the end of the initial or any renewal term. |

PLUS APPLICABLE TAXES

**INSURANCE & TAXES**

You are required to provide and maintain insurance related to the Equipment, and to pay any property, use, and other taxes related to this Lease or the Equipment. (See Sections 4 and 6 on page 2 of this Lease.) If you are tax-exempt, you agree to furnish us with satisfactory evidence of your exemption.

**TERMS AND CONDITIONS**

BY SIGNING THIS LEASE: (i) YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS ON THE FRONT AND SECOND PAGE OF THIS LEASE, (ii) YOU AGREE THAT THIS LEASE IS A NET LEASE THAT YOU CANNOT TERMINATE OR CANCEL, YOU HAVE AN UNCONDITIONAL OBLIGATION TO MAKE ALL PAYMENTS DUE UNDER THIS LEASE, AND YOU CANNOT WITHHOLD, SETOFF OR REDUCE SUCH PAYMENTS FOR ANY REASON, (iii) YOU WILL USE THE EQUIPMENT ONLY FOR BUSINESS PURPOSES, (iv) YOU WARRANT THAT THE PERSON SIGNING THIS LEASE FOR YOU HAS THE AUTHORITY TO DO SO AND TO GRANT THE POWER OF ATTORNEY SET FORTH IN SECTION 7 OF THIS LEASE, (v) YOU CONFIRM THAT YOU DECIDED TO ENTER INTO THIS LEASE RATHER THAN PURCHASE THE EQUIPMENT FOR THE TOTAL CASH PRICE, AND (vi) YOU AGREE THAT THIS LEASE WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY AND YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN NEW JERSEY. YOU AND WE EXPRESSLY WAIVE ANY RIGHTS TO A TRIAL BY JURY.

**US EXPRESS LEASING, INC.**

Lessor
X ______________________
Authorized Signature

Print Name & Title ______ Date 5/11/2006

**PLEDGER, M.D., NORMAN R. d/b/a Protho Medical Clinic**

Lessee
X [signature]
Authorized Signature

Print Name & Title ______ Date 5/11/2006

## PERSONAL GUARANTY

THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS. When we use the words you and your in this Personal Guaranty, we mean the Personal Guarantor(s) indicated below. When we use the words we, us and our in this Personal Guaranty, we mean US Express Leasing, Inc. In consideration of our entering into the lease agreement identified above ("Lease"), you unconditionally and irrevocably guarantee to us, our successors and assigns the prompt payment and performance of all obligations of the Customer identified above ("Lessee") under the Lease. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Lessee or against the equipment covered by the Lease. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the Lease and you will be bound by such changes. If the Lessee defaults under the Lease, you will immediately perform all obligations of the Lessee under the Lease, including, but not limited to, paying all amounts due under the Lease. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Lessee. This is a continuing guaranty which will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Lessee in the event you must pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agrees that your liability is joint and several. You authorize us or any of our assignees to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY. YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN NEW JERSEY. YOU EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

X [signature]
Personal Guarantor (no title)
NORMAN PLEDGER    5/11/2006
Print Name    Date
5207 EAST BROADWAY ST NORTH LITTLE ROCK AR 72117
Home Street Address/City/State/Zip
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
Social Security Number    Phone No.

X ______________________
Personal Guarantor (no title)
Print Name    Date
Home Street Address/City/State/Zip
Social Security Number    Phone No.

EXHIBIT
A
tabbles

1. **LEASE; DELIVERY AND ACCEPTANCE.** You agree to lease the equipment and other property described on the front of this lease agreement (collectively "Equipment") on the terms and conditions shown on the front and second page of this lease ("Lease.") If you have entered into any purchase or supply contract ("Supply Contract") with any Supplier, you assign to us your rights under such Supply Contract, but none of your obligations (other than the obligation to pay for the Equipment if it is accepted by you as stated below and you timely deliver to us such documents and assurances as we request). From time to time we will advance to the Equipment Supplier on your behalf a percentage of the Total Cash Price (as defined below) prior to the full and final amounts advanced to the Equipment Supplier and you will be obligated to repay to us the sum of such advances, plus accrued interest thereon from the date of such advances to the repayment date at a monthly rate of one percent (1%). You will be obligated to repay all such amounts upon our demand even if the Lease is not ultimately commenced and we shall have no liability for any failures or defaults of your Equipment Supplier. Once all the advances have been made, the amounts so advanced plus accrued interest thereon shall be included in your Lease Payments. You will arrange for the delivery of the Equipment to you. When you receive the Equipment, you agree to inspect it to determine if it is in good working order. The Equipment will be deemed irrevocably accepted by you upon the earlier of; a) the delivery to us of a signed Delivery and Acceptance Certificate (if requested by us); or b) 10 days after delivery of the Equipment to you if previously you have not given written notice to us of your non-acceptance ("Acceptance Date.") The Initial Lease Term shall commence on a date designated by us after receipt of all required documentation and acceptance by us (the "Commencement Date.") You agree to pay interim rent for the period between the Acceptance Date and the Commencement Date. The first Lease Payment is due on or before the Commencement Date, as invoiced by us, unless in row A of the Term and Payment Schedule on the front of this Lease it is specified that 0 Advance Payments are due, in which case the first Lease Payment will be due on the date specified by us in the month following the Commencement Date, and the remaining Lease Payments will be due on the same day of each subsequent month (or such other time period specified on the front of this Lease) at an address specified by us in writing. You authorize us to adjust the Lease Payment up or down by not more than 15% if the total amount we have paid in connection with the purchase, delivery and installation of the Equipment, including any trade-up and buyout amounts (collectively, the "Total Cash Price") differs from the estimated Total Cash Price originally assumed for documentation purposes. The Lease Payment is also subject to change if the Commencement Date occurs 30 days or more after the date we approved your application for this Lease and the yield on US Treasury Notes that most closely matures three years after the Lease approval date (as published by the US Federal Reserve Bank) increases by twenty five basis points or more during that 30 day period. If any Lease Payment or other amount payable to us is not paid within 3 days of its due date, you will owe us a late charge not to exceed the greater of 10% of each late payment or $20.00 (or such lesser rate or amount as is the maximum allowable under applicable law.) Payments which are not paid within 30 days of when due shall accrue interest at 1.5% per month (or such lesser rate as is the maximum rate allowable under applicable law) from such 30th day until paid in full, together with all accrued, but unpaid, interest.

2. **NO WARRANTIES.** We are leasing the Equipment to you "AS-IS." YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE THE EQUIPMENT, WE DO NOT REPRESENT THE MANUFACTURER OR THE SUPPLIER, AND YOU HAVE SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON YOUR OWN JUDGMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. YOU AGREE THAT REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR ANY DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, SPECIAL, OR INDIRECT. YOU AGREE THAT NEITHER SUPPLIER NOR ANY SALESPERSON, EMPLOYEE OR AGENT OF SUPPLIER IS OUR AGENT OR HAS ANY AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY WAY. We transfer to you for the term of this Lease any warranties made by the manufacturer or Supplier under a Supply Contract.

3. **EQUIPMENT LOCATION; USE AND REPAIR; RETURN.** You will keep and use the Equipment only at the Equipment Location shown on the front of this Lease. You may not move the Equipment without our prior written consent. At your own cost and expense, you will keep the Equipment eligible for any manufacturer's certification, in compliance with all applicable laws and in good condition, except for ordinary wear and tear. You will not make any alterations, additions or replacements to the Equipment without our prior written consent. All alterations, additions and replacements will become part of the Equipment and our property at no cost or expense to us. We may inspect the Equipment at any reasonable time. Unless you purchase the Equipment in accordance with this Lease, within 10 days of the expiration or earlier termination of this Lease you will deliver the Equipment to us in good condition and repair, except for ordinary wear and tear, to any place in the United States that we tell you and upon our request, you will provide us with a certification from the manufacturer or its authorized representative as to the Equipment's condition. To the extent that any portion of the Equipment consists of software or other licensed products, you will return all tangible items of software and destroy all intangible items of software, certify in writing to us that you have complied with the above requirements, have not retained such software in any form and will not use the software after termination. You will pay all expenses of deinstalling, crating and shipping and you will insure the Equipment for its full replacement value during shipping.

4. **TAXES AND FEES.** You will pay all excise taxes, sales and use taxes, personal property taxes, and all other taxes and charges which may be imposed by any governmental entity during the term of this Lease, arising from the use, acquisition, ownership or leasing of the Equipment, whether due before or after termination of the Lease. You will reimburse us for all administrative costs associated with the preparation, filing, payment, and other costs necessary to properly administer taxes associated with the Equipment. Where required by law, we will file the personal property tax returns with respect to the Equipment, and you shall pay us in advance, and at the time(s) we require, the taxes that we anticipate will be due during the year.

5. **LOSS OR DAMAGE.** As between you and us, you are responsible for any loss, theft or destruction of, or damage to, the Equipment (collectively "Loss") from any cause at all, whether or not insured, until it is delivered to us at the end of this Lease. You are required to make all Lease Payments even if there is a Loss. You must notify us in writing immediately of any Loss. Then, at our option, you will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, or (b) pay us the amounts specified in Section 9(b) below.

6. **INSURANCE.** You will provide and maintain at your expense (a) property insurance against the loss, theft or destruction of, or damage to, the Equipment for its full replacement value, naming us as loss payee, and (b) public liability and third party property insurance, naming us as an additional insured. You will give us certificates or other evidence of such insurance when requested. Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given 30 days advance notice of any cancellation or material change of such insurance. If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to obtain insurance covering our interest in the Equipment for the term of this Lease, including any renewal or extensions. We may add the costs of acquiring and maintaining such insurance, and our fees for our services in placing and maintaining such insurance (collectively, "Insurance Charge") to the amounts due from you under this Lease. You will pay the Insurance Charge in equal installments allocated to the remaining Lease Payments. Nothing in this Lease will create an insurance relationship of any type between us and any other person. You acknowledge that we are not required to secure or maintain any insurance, and we will not be liable to you if we terminate any insurance coverage that we arrange.

7. **TITLE; RECORDING.** We are the owner of and will hold title to the Equipment. You will keep the Equipment free of all liens and encumbrances. You agree that this transaction is a true lease. However, as a precaution in case this transaction is deemed to be a lease intended for security, you grant us a first priority security interest in the Equipment (including any replacements, substitutions, additions, attachments and proceeds). You will deliver to us such signed documents as we may request to protect our interest in the Equipment. YOU IRREVOCABLY AUTHORIZE US TO FILE A COPY OF THIS LEASE AND/OR ANY OTHER DOCUMENT AS A FINANCING STATEMENT AND APPOINT US OR OUR DESIGNEE AS YOUR ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON YOUR BEHALF IF REQUIRED, SUCH FINANCING STATEMENTS COVERING THE EQUIPMENT AS WE MAY DEEM NECESSARY AND REIMBURSE US FOR COST OF SUCH FILINGS AND LIEN SEARCHES.

8. **DEFAULT.** Each of the following is a "Default" under this Lease: (a) you fail to pay any Lease Payment or any other payment within 10 days of its due date, (b) you do not perform any of your other obligations under this Lease or in any other agreement with us or with any of our affiliates and this failure continues for 10 days after we have notified you of it, (c) you become insolvent, you dissolve or are dissolved, or you assign your assets for the benefit of your creditors, or enter (voluntarily or involuntarily) any bankruptcy or reorganization proceeding; (d) any guarantor of this Lease dies, does not perform its obligations under the guaranty, or becomes subject to one of the events listed in clause (b) or (c) above.

9. **REMEDIES.** If a Default occurs, we may do one or more of the following: (a) we may cancel or terminate this Lease or any or all other agreements that we have entered into with you; (b) we may require you to immediately pay us, as compensation for loss of our bargain and not as a penalty, a sum equal to (i) all unpaid Lease Payments for the remainder of the term plus our anticipated residual interest in the Equipment, if applicable, plus (ii) all other amounts due or that become due under this Lease; (c) we may require you to deliver the Equipment to us as set forth in Section 3 and terminate use of any software component of the Equipment; (d) we or our agent may peacefully repossess the Equipment without court order and you will not make any claims against us for damages or trespass or any other reason; and (e) we may exercise any other right or remedy available at law or in equity. You agree to pay all of our costs of enforcing our rights against you, whether in a bankruptcy proceeding or otherwise, including reasonable attorneys' fees. If we take possession of the Equipment, we may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Equipment) to the amounts that you owe us. You will remain responsible for any amounts that are due after we have applied such net proceeds.

10. **FINANCE LEASE STATUS.** You agree that if Article 2A-Leases of the Uniform Commercial Code applies to this Lease, this Lease will be considered a "finance lease" as that term is defined in Article 2A. By signing this Lease, you agree that either (a) you have reviewed, approved, and received, a copy of the Supply Contract or (b) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the Supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

11. **ASSIGNMENT. YOU MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR YOUR INTEREST IN THIS LEASE.** We may, without notifying you, sell, assign, or transfer this Lease and our rights to the Equipment. You agree that the new owner will have the same rights and benefits that we have now under this Lease but not our obligations. The rights of the new owner will not be subject to any claim, defense or set-off that you may have against us.

12. **PURCHASE OPTION; AUTOMATIC RENEWAL.** If no Default exists under this Lease, *you will have the option at the end of the initial or any renewal term to purchase all (but not less* than all) of the Equipment at the Purchase Option price shown on the front of this Lease, plus any applicable taxes. Unless the Purchase Option price is $1.00, you must give us at least 90 days written notice before the end of the initial lease term that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Lease, this Lease will automatically renew for an additional 90-day period, and then on a monthly basis until you exercise a purchase option or deliver the Equipment to us. During such renewal(s) the Lease Payment will remain the same. We may cancel an automatic renewal term by sending you written notice 10 days prior to such renewal term. If the Fair Market Value Purchase Option has been selected, we will use our reasonable judgment to determine the Equipment's in-use and in-place fair market value. If you do not agree with our determination of the Equipment's fair market value, the fair market value (in-use and in-place) will be determined at your expense by an independent appraiser selected by us. Upon payment of the Purchase Option price, we shall transfer our interest in the Equipment to you "AS-IS, WHERE-IS" without any representation or warranty whatsoever and this Lease will terminate. With respect to items of Equipment consisting of software, your right to continue use such of software will be subject to the applicable license agreement.

13. **INDEMNIFICATION.** You are responsible for any losses, damages, penalties, claims, suits and actions (collectively "Claims"), whether based on a theory of strict liability or otherwise caused by or related to (a) the manufacture, installation, ownership, use, lease, possession, or delivery of the Equipment or (b) any defects in the Equipment. You agree to reimburse us for and if we request, to defend us against, any Claims.

14. **MISCELLANEOUS; FAX SIGNATURES.** You agree that the terms and conditions contained in this Lease make up the entire agreement between you and us regarding the lease of the Equipment. Any change in any of the terms and conditions of this Lease must be in writing and signed by us. You agree, however, that we are authorized, without notice to you, to supply missing information or correct obvious errors in this Lease. All of our rights and indemnities will survive the termination of this Lease. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to Lease Payments in inverse order of maturity, and any remaining excess will be refunded to you. If you do not perform any of your obligations under this Lease, we have the right, but not the obligation, to take any action or pay any amounts that we believe are necessary to protect our interests. You agree to reimburse us immediately upon our demand for any such amounts that we pay. If more than one Lessee has signed this Lease, each of you agree that your liability is joint and several. Any signature, execution and delivery of any document or instrument may be satisfied in our discretion and to the extent permitted by the UCC by authentication of such document or instrument as a record within the meaning of Article 9 of the UCC. A fax version of your signature on this Lease when received by us shall be binding upon you as if originally signed. However, this lease shall be binding on us when signed by us. Both you and we agree that the version of this Lease with our original signature shall constitute the original authoritative version.

Initial ____

FROM : PROTHO MEDICAL CLINIC PHONE NO. : 5019452303 Aug. 09 2006 06:20AM P2

**AMENDMENT TO LEASE AGREEMENT – Revised Payment**

*Please fax completed and signed Amendment to -USXL at 1-866-329-8795.*
*Questions or need assistance? Call 1-866-550-USXL – (1-866-550-8795)*

RE: LEASE AGREEMENT # 40183138 by and between PLEDGER, M.D., NORMAN R. d/b/a Protho Medical Clinic, as Lessee, and U.S. Express Leasing, Inc. as Lessor.

The above reference Lease Agreement is hereby amended as follows:

The applicable *SUPPLIER INFORMATION, EQUIPMENT DESCRIPTION, END OF LEASE PURCHASE OPTION* and *TERM AND PAYMENT SCHEDULE* boxes on the front page of the Lease Agreement are hereby deleted and replaced as follows:

| | | | | |
|---|---|---|---|---|
| *SUPPLIER INFORMATION # 1* | Supplier Name ("SUPPLIER") CYNOSURE, INC. | | | |
| | Street Address/City/State/Zip 5 CARLISLE ROAD, WESTFORD, MA 01886 | | Supplier Phone # (888) 523-2333 | |
| *SUPPLIER INFORMATION # 2* | Supplier Name ("SUPPLIER") ECLIPSE MEDICAL, LTD. | | | |
| | Street Address/City/State/Zip 16850 DALLAS PARKWAY, DALLAS, TX 75248 | | Supplier Phone # (972) 380-2911 | |
| *EQUIPMENT DESCRIPTION* | **Equipment Description** | | **Quantity** | **Serial Number** |
| | Cynosure Apogee Elite Laser System | | 1 | |
| | Cynosure Affirm Laser System | | 1 | |
| | Eclipse Medical: Smartsound System / Microdermabrasion System | | 1 | |
| *END OF LEASE PURCHASE OPTION* | Check one applicable box. If no box is checked or if more than one box is checked, the Fair Market Value Purchase Option will apply.<br>Fair Market Value Purchase Option $1.00 Purchase Option<br>☒ Fixed Price Purchase Option of 10% of the Total Cash Price (defined in Section 1) | | | PLUS APPLICABLE TAXES |
| *TERM AND PAYMENT SCHEDULE* | Initial Lease Term: 66 Months (see Section 1 on page 2 of this Lease) | Lease Payment: 3 @ $0.00<br>3 @ $25.00<br>60 @ $4,217.05 | You agree to pay at the time you sign this Lease:<br>A) Total Number of Advances: 1 (Mos.)<br>B) Total Advance Lease Payment - $0.00<br>C) Sales/Use Tax on Lease Payment = $0.00<br>D) One-time Documentation Fee = $150.00<br>E) Total Due = $150.00<br>If more than one Lease Payment is required in advance, the additional amount will be applied at the end of the initial or any renewal term. | PLUS APPLICABLE TAXES |

All other terms and conditions of the Lease Agreement shall remain in full force and effect.

US EXPRESS LEASING, INC.

By: [signature]

Name: William P. Hadicke, V.P. Operations

Title:

PLEDGER, M.D., NORMAN R.
d/b/a Protho Medical Clinic

By: [signature]

Name: Norman R Pledger

Title: MD

AMEND PAY v10 8/4/04

EXHIBIT B

**DELIVERY AND ACCEPTANCE CERTIFICATE**

*Please fax completed and signed D&A Certificate to USXL at 1-866-FAX-USXL (1-866-329-8795)*

LESSEE Name: PLEDGER, M.D., NORMAN R.

Lease # 40183138

On behalf of Lessee, I hereby certify that all of the equipment and other property referred to in the above referenced Lease Agreement with US Express Leasing, Inc. has been delivered, inspected and is accepted by Lessee for all purposes of the Lease.

ACCORDINGLY, I AUTHORIZE LESSOR TO PURCHASE THE EQUIPMENT AND COMMENCE BILLING UNDER THE LEASE.

DO NOT SIGN THIS DELIVERY AND ACCEPTANCE CERTIFICATE UNTIL YOU HAVE RECEIVED THE EQUIPMENT.

LESSEE SIGNATURE

By: [signature]

Print Name: Norman R Pledger

Title: M.D

Date: 8/28/06

For Lessor Use Only (if applicable)

Name of person Verifying Delivery & Acceptance of Equipment:

Signature of Employee who made telephone verification:

Date of Telephone Verification:

DNA v1.0 8/19/2004

TOTAL P.02

08/28/2006 2:44PM (GMT-04:00)

September 25, 2008

US EXPRESS LEASING, INC
10 Waterview Blvd
Parsippany, NJ 07054

Via Federal Express

Dr. Norman Pledger
5207 East Broadway
North Little Rock, AR 72117

Re: Lease Agreement No.: 40183138

| | |
|---|---|
| Balance Due: | $ 239,293.91 |
| Estimated Proceeds from disposition: | $ 25,000.00 |
| Estimated Deficiency: | $ 214,293.91 |

Dear Dr. Pledger:

**NOTIFICATION OF DISPOSTION OF COLLATERAL**

You are hereby notified that US Express Leasing, Inc. ("USXL"), will be taking possession of the computer equipment subject to the above-referenced Lease Agreement (the "Lease"), due to the default of Norman Pledger, MD. under the terms of the Lease.

Pursuant to the terms and conditions of the Lease, the equipment will be sold, leased or otherwise disposed of at a private sale, lease or other permitted transaction on or after ten (10) days from the date the equipment is repossessed or surrendered.

You may redeem the equipment at any time prior to the sale or disposition of the equipment by remitting to USXL at the above address, in certified funds, the Balance Due above plus all expenses that USXL has incurred since the date of this letter. You are entitled to an accounting of this amount (for a charge of $75.00) and may obtain it by calling us at1-866-879-8795 X 603.

**Unfortunately, the proceeds of the equipment disposition most likely will be less than the balance due referenced above. Based upon a preliminary valuation that USXL has obtained from a remarketing company, USXL expects to recover $25,000.00 from the sale of the equipment. Your company and any guarantors will be liable for the deficiency balance estimated above plus any expenses incurred since the date of this letter.**

This notice is issued to you with all rights reserved by us and shall not be intended or construed as a waiver of any of our rights or remedies.

If you have any questions, please contact the undersigned.

Sincerely,

Ellen Brandt
US EXPRESS LEASING, INC.
973-576-0603

CC: Norman Pledger
Chip Welch, Esq.

EXHIBIT
tabbies
D

From: Origin ID: CBZA (973)576-0686
Alexis Guyre
US Express Leasing, Inc
10 Waterview Blvd
10 Waterview Blvd
Parsippany, NJ 07054

Ship Date: 25SEP08
ActWgt: 1 LB
CAD: 5257644/INET8091
Account#: S *********

Delivery Address Bar Code

SHIP TO: 9735760686 X 686 BILL SENDER

**Norman Pleger**
**Dr. Norman Pleger**
**5207 East Broadway**

**North Little Rock, AR 72117**

Ref # 520
Invoice #
PO #
Dept #

TRK# 0201 7927 5681 2854

**TUE - 30SEP** **A1**
**EXPRESS SAVER**

**72117**
**AR-US**
**MEM**

# SH LITA

**After printing this label:**

1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.